2002 WY 77

**In the Matter of the Worker's Compensation Claim of Bob FRANKS, An Employee of Greybull Development Corp.**

**Bob Franks, Appellant (Petitioner),**

v.

**State of Wyoming, ex rel, Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).**

No. 01–98.

Supreme Court of Wyoming.

May 21, 2002.

Representing Appellant: Bobbi D. Bronnenberg of Garrison & Bronnenberg, P.C., Cody, WY.

Representing Appellee: Hoke MacMillan, Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

LEHMAN, Chief Justice.

[¶ 1] Appellant Bob Franks appeals from the final decision of the Office of Administrative Hearings which denied his request for workers' compensation benefits.

[¶ 2] We affirm.

## ISSUES

[¶ 3] Franks presents the following issues for our review:

1. Whether the hearing examiner erred when he ruled that the appellant Bob Franks failed to satisfy his burden of proving that his back condition was related to the work-related accident on May 17, 2000.

(a) Whether the hearing examiner erred when he ignored direct evidence that the injury to Appellant's back occurred as a result of the work-related accident on May 17, 2000 and/or that his back condition was materially aggravated as a result of the May 17, 2000 accident.

Appellee Wyoming Workers' Safety and Compensation Division (Division) phrases its issue in the following manner:

Did the Hearing Examiner correctly find that appellant failed to prove that the failure of his prior spinal fusion surgery was the result of a compensable work injury?

## FACTS

[¶ 4] On May 17, 2000, Franks was employed by Greybull Development as a construction worker. On that date, it was raining heavily and Franks was pulling a trailer behind a truck on a muddy road when the truck became stuck in the mud. Franks unhooked the trailer and pulled the truck forward. Franks went back to the trailer to set it on a round block of wood, but as he attempted to do so, the trailer slipped, pinning his left leg. He pushed the trailer off of

his leg; and, when he did so, he felt his back pop and a burning sensation in his neck.

[¶ 5] Franks went to the emergency room for treatment on May 18, 2000. The emergency room physician referred Franks to Steven Emery, M.D., an orthopedic surgeon in Cody, who saw Franks on May 26, 2000, and ultimately diagnosed "severe neural foraminal stenosis bilaterally at L5–S1, and on the left at L4–5 multifactorial." In the meantime, Franks filed an injury report with the Worker's Compensation Division on May 19, 2000.

[¶ 6] At the hearing, both sides presented evidence regarding a work-related injury that Franks had suffered in 1991 while working as a laborer in Texas and, as a result of which, Franks underwent surgery to have a spinal fusion at the L5–S1 level. Franks was given a whole body impairment rating of 15 percent and was awarded worker's compensation benefits for that injury. Franks argued that the May 17, 2000 incident either reinjured his back or materially aggravated that preexisting condition. The Division countered that Franks' current symptoms were the result of the preexisting condition rather than from any new or aggravating injury.

[¶ 7] At the conclusion of the hearing, the Division concluded that Franks' back condition was preexisting and denied benefits. Franks appealed this decision to the district court, which certified the case here pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

[¶ 8] An administrative agency's decision certified directly to this court is reviewed under the same appellate standards applicable to the reviewing court of the first instance. *Wesaw v. Quality Maintenance*, 2001 WY 17, ¶ 8 19 P.3d 500, ¶ 8 (Wyo.2001). Our judicial review is limited to those considerations specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001), which provides in pertinent part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning

or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law[.]

[¶ 9] When we review findings of fact, we examine the entire record to determine if substantial evidence supports the agency's findings. *Wesaw,* ¶ 9. If the agency's decision is supported by substantial evidence, we will not substitute our judgment for that of the agency. *Id.* "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence." *Id.*

[¶ 10] An administrative agency's conclusions of law are affirmed only if this court determines that they are in accord with the law. *Wesaw,* ¶ 8. We do not defer to the agency's determination regarding conclusions of law, and we will correct any error the agency made in either interpreting or applying the law. *Id.*

## DISCUSSION

[¶ 11] Franks claims that the hearing examiner erred by denying his claim on the basis that his injury was preexisting. The Division responds that the evidence supported the hearing examiner's decision. At the core of this case is a May 29, 1991 injury that Franks sustained while working as a laborer in Texas. Dr. Curtis Thorpe, Franks' treating physician for that injury, noted on March 12, 1992:

X-rays of the lumbar spine do show a spondylolysis at L5–S1 and a Grade I spondylolisthesis L5–S1. Myelogram done at St. Elizabeth Hospital shows a bulging disc at L4–L5 and a sensitive area because

of his spondylo as L5–S1. Post-myelogram CT shows a large spondylitic ridge and bulging disc impingement the nerve root on the right at L5–S1. The disc at L4–L5 seems to be intact. There is a report of an MRI scan that does show degenerative discs at L4–L5 and L5–S1. I have explained to this gentleman at length that he does have a rather severe back condition, that probably will prevent him to work as a laborer.

Dr. Thorpe operated on Franks on March 31, 1992, to fuse his spine together at the L5–S1 level. The Texas Workers' Compensation Commission declared that his injury was compensable and awarded Franks benefits for a 15% whole body impairment rating.

[¶ 12] In 1993, a year after his surgery, Franks visited Dr. Thorpe complaining of back and leg pain. Franks visited Dr. Thorpe again in 1996 for continued back and leg pain. Dr. Thorpe expressed concern after both of those visits about whether Franks' fusion was solid or not.

■ [¶ 13] Under the worker's compensation statutory scheme, an injury does not include "[a]ny injury or condition preexisting at the time of employment with the employer against whom a claim is made." Wyo. Stat. Ann. § 27–14–102(a)(xi)(F) (Lexis 1999). A preexisting condition may, however, be compensable if the employment "aggravated, accelerated, or combined with the preexisting condition to produce the disability for which the employee is seeking benefits." *Brees v. Gulley Enterprises, Inc.*, 6 P.3d 128, 131 (Wyo.2000).

[¶ 14] Dr. Emery testified at the hearing by way of a deposition. During Dr. Emery's deposition, he testified that his physical exam of Franks left him skeptical of the extent of Franks' symptoms because Franks demonstrated give-way weakness of all muscle groups of the upper and lower extremities, which was inconsistent and impossible to rate. He explained that when you see give-way weakness in all muscle groups, "it generally means the patient just isn't trying." He went on to say that "if he truly had the muscle weakness that I examined, if the muscle gave way at that point, he would have

been unable to have walked in the room or back out or use his hands in any fashion."

[¶ 15] Dr. Emery ordered an MRI on May 31, 2000, which showed "severe neural foraminal stenosis bilaterally at L5–S1, and on the left at L4–5 mutifactorial. There is lateral recess stenosis bilaterally moderate at L4–5. There is a herniated disc at L4–5." He testified that based on these findings, Franks' stenosis condition was likely the cause of his back and leg pain. Dr. Emery testified with a level of medical certainty that this degeneration or spinal stenosis was not caused by the May 17, 2000 injury. Dr. Emery then stated that "[i]t is possible that the patient's injury was related to his work injury. However it's—it is my opinion that his work injury—or I'm sorry, his preexisting condition is probably more related to his condition than the work injury."

[¶ 16] Franks' medical expert witness, Dr. Robert Wood, a neurosurgeon, also testified by way of deposition. Dr. Wood opined that since Franks was better after his surgery in 1991 and able to work until May 17, 2000, he believed that Franks' fusion was solid during that period of time. He then gave his opinion that the May 17, 2000 injury aggravated Franks' preexisting condition by causing the fusion to rupture.

[¶ 17] Dr. Wood's perceptions and opinions were based upon a history that Franks gave him that he had not had any problems since his surgery until the May 17, 2000 injury. This information is contrary to medical records kept by Dr. Thorpe, which indicate that Franks had visited him complaining of back and leg pain in 1993 and again in 1996. Dr. Thorpe's notes also reveal that he was not at all sure that the fusion was solid and indeed that he was fearful that it was not. Dr. Thorpe's notes finally document a discussion he had with Franks during which Dr. Thorpe explained to Franks that his injury was serious and that he probably would no longer be able to work as a laborer.

[¶ 18] We agree with the hearing examiner's decision to consider Dr. Wood's testimony to be less persuasive than Dr. Emery's testimony because Dr. Wood's opinions were based upon the incomplete and inaccurate information provided by Franks that he had

no problems following his fusion. Dr. Thorpe's notes show otherwise. We hold that Franks failed to prove by a preponderance of the evidence that the May 17, 2000 incident caused any new injury or materially aggravated his preexisting condition.

### CONCLUSION

[¶ 19] The evidence demonstrated that Franks' current symptoms are the result of the preexisting condition rather than from a new injury or a material aggravation of that condition. We hold that substantial evidence supported the hearing examiner's decision.

[¶ 20] Affirmed.